## PALMER & PARKER CO. v. UNITED STATES.
### No. 1973.

District Court, D. Massachusetts.
May 25, 1931.

See, also, 10 F.(2d) 214.

John W. Lowrance, of Boston, Mass., for libelant.

Harold Williams, Jr., of Boston, Mass., for petitioner Bowery & East River Nat. Bank.

Frederick H. Tarr, U. S. Atty., and A. Chesley York, Asst. U. S. Atty., both of Boston, Mass., and O. P. M. Brown, Sp. Asst. U. S. Atty., of Washington, D. C.

MORTON, District Judge.

There is an unpaid balance of freight money amounting to $30,555.55. The present controversy is between the United States as owner of the Mt. Shasta, and the Bowery & East River National Bank, as to which is entitled to this sum.

The United States objects to the jurisdiction of the court to hear this question on the grounds, first, that no question of maritime law is involved, and it cannot, therefore, be interjected and heard in an admiralty proceeding; and, second, that it is a claim against the United States and by section 5 of the Suits in Admiralty Act (46 USCA § 745) such claims must be made within two years; that this claim is, therefore, outlawed. In addition to these jurisdictional points, the United States contends that, on the merits, it is entitled to the money.

The facts are stipulated; and only those essential to the discussion need be referred to. Immediately upon making the African charter for the Mt. Shasta in July, 1920, Fox & Co., Inc., who were agents for the Mt. Shasta Steamship Company which held the government charter of the vessel and were also agents for the vessel, assigned the charter party and all freight moneys to be earned under it to the predecessor of the claimant bank as security for certain present loans. It does not expressly appear that the proceeds of these loans were used for the vessel; and I do not think that such an inference is warranted by the stipulated facts. The money may have been so used, but on the other hand, it may have been used by Fox & Co. for other purposes. The assignment of the freight money put the bank into the shoes of the assignor as to the enforcement of rights. The present proceeding may be regarded, either as one by the bank to collect the balance of freight money due from Palmer & Parker under the charter party, the government having intervened to protect its interest, or as a suit concerning a res (the freight money), brought into court by the libel of the United States, the bank being a claimant to the res. Either way the admiralty court has jurisdiction. In neither aspect is the proceeding a controversy against the United States within section 5 of the Suits in Admiralty Act (46 USCA § 745). I am, therefore, of opinion that jurisdiction exists. It would be a reproach to the administration of law if any aspect of this long drawn out litigation had to be sent to another court and begun over again.

Coming to the merits, the United States, as owner of the vessel, delivered her under a charter purchase agreement to the Mt. Shasta Steamship Company. Fox & Co., Inc., as agents of the Steamship Company made the charter party with Palmer & Parker out of which this litigation has grown. The charter sales agreement between the United States and the Mt. Shasta Steamship Company says, "The Owner shall have a lien upon all cargoes, and all sub-freights, for any amounts due under this charter-party." The real question is whether this provision cut under and conditioned the right of Fox & Co. to assign freights earned or to be earned under the sub-charter. In Re Atlantic, G. & P. S. S. Co. (D. C.) 289 F. 145, the United States had turned over to an operating company six ships under sale agreements which appear to have been similar to that concerned in this case. There, as here, bankers had lent money taking as security assignments of freights and the question was raised between them and the government, as to which had the better right to freights completely earned by delivery of the cargo before the government took back the ships. Judge Rose held that the bankers were entitled to the freight money. In a later matter arising in

the same case, he followed his previous decision saying: "The Government's rights as owners of the ship did not attach to such freights as had been completely earned before it repossessed itself of the vessels themselves." 1924 A. M. C. 131, at page 135. The language of the agreement on which the government's claim was rested is not given in the report; but it must have been of the same general purport as that relied on here. Judge Rose's view, that no special property in future freight money was created by the sale agreement, seems not to depend on the precise language used and to be applicable to this case. On the other hand, the assignment to the bank of sums due and to become due under a specified contract would convey rights in them which, having been acquired for value without notice of the government's claim, take precedence of it. The statutory provisions concerning liens on vessels do not apply to transactions of this character.

Let there be a decree in favor of the Bowery & East River National Bank.